JACKSON v SAGINAW COUNTY

Docket No. 106498. Argued April 7, 1998 (Calendar No. 3). Decided
    July 1, 1998.

> Johnny Jackson brought an action in the Saginaw Circuit Court
> against Saginaw County and others, including Vincent Uy, M.D.,
> alleging gross negligence in denying him adequate medical care
> while he was incarcerated in the Saginaw County jail. The court,
> Patrick M. Meter, J., granted summary disposition for the defend-
> ants on the basis of governmental immunity. The Court of Appeals,
> D. E. HOLBROOK, JR., P.J., and L. F. SIMMONS, J. (WHITE, J., concurring
> in part and dissenting in part), in an unpublished opinion per
> curiam, affirmed in part, but reversed the grant of summary dispo-
> sition in favor of Dr. Uy, finding that reasonable minds could differ
> regarding whether his conduct was so reckless as to demonstrate a
> substantial lack of concern for whether an injury resulted (Docket
> No. 182564). The defendants appeal.
>
> In a unanimous opinion by Justice CAVANAGH, the Supreme Court
> *held*:
>
> Because reasonable minds could not differ in concluding that the
> evidence, when viewed in a light most favorable to the plaintiff,
> does not raise a question whether Dr. Uy, a government employee,
> was grossly negligent as required for liability under the governmen-
> tal tort liability act, the trial court did not err in granting summary
> disposition in his favor.
>
> No testimony was presented to support the Court of Appeals
> finding that Dr. Uy violated the standard of care with regard to a
> negligence standard or to support a notion that his conduct would
> be so reckless as to demonstrate a substantial lack of concern for
> whether an injury would result.
>
> Reversed in part.

*Jensen, Gilbert, Smith & Borrello, P.C.* (by
*Peter C. Jensen*), for defendants-appellants.

CAVANAGH, J. In this case we are called on to
address whether summary disposition was appropri-

ately granted in favor of the sole remaining defendant under MCR 2.116(C)(7) and MCR 2.116(C)(10).[1] We find that reasonable minds could not differ in concluding that the evidence, when viewed in a light most favorable to the plaintiff, does not raise a question whether the individual defendant, Vincent Uy, M.D., a government employee, was grossly negligent as required for liability under § 7 of the governmental tort liability act (GTLA), MCL 691.1407; MSA 3.996(107). Accordingly, we find that the trial court did not err in granting summary disposition in favor of Dr. Uy, and reverse the holding of the Court of Appeals to the contrary.

I

In reviewing a grant of summary disposition, an appellate court must view the evidence in the light most favorable to the nonmoving party, and make all legitimate inferences in favor of the nonmoving party. *Skinner v Square D Co*, 445 Mich 153; 516 NW2d 475 (1994). Our review has found the Court of Appeals summary of the facts to be accurate, and we therefore adopt that summary:

> In December 1990, plaintiff was incarcerated in the Saginaw County jail, and in January 1991 began to experience throat and ear pain. Plaintiff was examined in the jail infirmary on several occasions between January 1991 and May 1991, at which time he was referred to a specialist. Plaintiff was thereafter diagnosed with throat cancer and his larynx was surgically removed.

---

[1] As will be noted, the Court of Appeals ruled on several issues in this matter. However, only the defendants have sought review in this Court, raising a solitary claim of error. The plaintiff, who appeared in propria persona in the Court of Appeals, has not appeared before this Court.

Plaintiff brought this two-count complaint: Count I alleged violations of "due process, equal protection and [the] prohibition against cruel and unusual punishment as guaranteed by the Michigan Constitution"; and Count II alleged, in the alternative, that defendants had been grossly negligent in denying him adequate medical care. Specifically, plaintiff alleged that defendants had delayed in providing him with specialized care despite his recurrent symptoms of throat and ear pain and hoarseness. Plaintiff further alleged that the treatment delay had proximately caused him pain and suffering, exacerbation of his cancerous condition, and a shortening of his life span. In their answer, defendants asserted general denials of negligence or gross negligence and also asserted the affirmative defense of governmental immunity.

Following some discovery, defendants moved for summary disposition. MCR 2.116(C)(7) [governmental immunity], (C)(10) [no genuine issue of material fact]. Defendants supported their motion with affidavits of the treating physician, Vincent Uy, M.D., and the supervisory nurse at the jail, Amy Valerio, R.N. The following chronology of events is drawn from these affidavits and the subsequent deposition of Dr. Uy:

1/11/91 Plaintiff was first seen by a jail nurse in the infirmary, complaining of throat and ear pain.

1/16/91 Plaintiff was seen a second time by a nurse, again complaining of throat and ear pain. The symptoms were "not serious," and plaintiff did not request to see a physician.

3/24/91 Plaintiff was seen again in the infirmary, complaining of recurrent throat and ear pain. The attending nurse scheduled an appointment for plaintiff to be seen by jail physician, Vincent Uy, M.D.

3/28/91 Dr. Uy examined plaintiff's throat with a tongue depressor, finding it to be red, inflamed, and infected. He prescribed an antibiotic and had a throat culture performed. He found no evidence of tumors or cancerous growth.

4/23/91 Dr. Uy again examined plaintiff, finding his throat still to be infected. Dr. Uy prescribed a stronger antibiotic

and had a second throat culture performed. No evidence of tumors or cancerous growth was detected.

5/9/91 Plaintiff complained that his symptoms had recurred. Because plaintiff stated that the earlier antibiotic treatment had been temporarily successful, Dr. Uy prescribed another antibiotic. No evidence of tumors or cancerous growth was detected.

5/21/91 Plaintiff complained again of a sore throat and now hoarseness. Dr. Uy referred plaintiff to an ear, nose, and throat specialist.

In his answer to defendants' summary disposition motion, plaintiff averred in an affidavit that, contrary to defendants' averments, he had continually complained about his medical condition "each and every month" between January 1991 and his release in July 1991. To corroborate this claim, plaintiff relied on the deposition testimony of Perri Payne, plaintiff's former cellmate, who testified that plaintiff continually complained about his medical condition. Payne further testified that at times plaintiff sought the attention of the guards by shaking the cell bars and requesting to be sent to the hospital.

Plaintiff's averments in his affidavit, and the deposition testimony of two treating physicians, are summarized as follows:

6/17/91 Plaintiff was seen by Robert Borenitsch, D.O., an ear, nose, and throat specialist. Given plaintiff's medical history of "progressive hoarseness" since December 1990 and the fact that he was a heavy smoker and drinker, Dr. Borenitsch immediately suspected a serious problem such as cancer, even before examining plaintiff. Dr. Borenitsch performed a laryngoscopy, revealing lesions on plaintiff's right vocal cord which Dr. Borenitsch believed to be a malignancy.

6/21/91 Dr. Borenitsch performed another laryngoscopy in conjunction with a biopsy. The biopsy confirmed the diagnosis of cancer.

6/26/91 Dr. Borenitsch informed plaintiff of the diagnosis and referred him to an otolaryngologist for surgery.

> Dr. Borenitsch eventually referred plaintiff to another otolaryngologist, Ramon Esclamado, M.D., who specialized in head and neck surgery.
>
> 7/19/91 Dr. Esclamado examined plaintiff, who indicated a history of throat pain for seven months and ear pain for six months as well as being a heavy smoker and drinker. Dr. Esclamado initially suspected squamous carcinoma.
>
> 7/22/91 A tracheotomy was performed because the tumor was obstructing plaintiff's airway.
>
> 10/8/91 After experimental chemotherapy treatment was unsuccessful in shrinking the tumor, a total laryngectomy was performed, removing plaintiff's voice box.
>
> After hearing arguments of counsel, the trial court granted summary disposition in favor of all defendants on the basis of governmental immunity. [Unpublished opinion per curiam, issued May 10, 1996 (Docket No. 182564), slip op at 1-3.]

On appeal by the plaintiff, the Court of Appeals affirmed summary disposition in favor of the defendants on the deliberate indifference claims, and the gross negligence claims against the county, the sheriff, and nurse Valerio, but reversed the grant of summary disposition in favor of Dr. Uy, finding that "reasonable minds could differ as to whether his conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted."[2] *Id.* at 6. We granted defendant's[3] application for leave to appeal, 456 Mich 878 (1997), and now reverse the decision of the Court of Appeals regarding Dr. Uy.

---

[2] As will be discussed below, this language reflects the statutory definition of gross negligence under § 7 of the GTLA.

[3] While counsel has characterized the appellant's posture as that of "defendants," because relief is sought only from the Court of Appeals decision regarding Dr. Uy, the singular form will be used for consistency.

II

As we have observed, the plaintiff, as the nonmoving party, is entitled to have the facts viewed in the light most favorable to him, and to all legitimate inferences therefrom in his favor. *Skinner, supra; Moll v Abbott Laboratories*, 444 Mich 1, 27, n 36; 506 NW2d 816 (1993). We review this question of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991). Defendant[4] claims error in the finding of the Court of Appeals that summary disposition in regard to him was inappropriate on the basis of a finding that reasonable minds could differ with regard to whether his conduct amounted to gross negligence.

The Court of Appeals in the past has held that "[g]enerally, once a standard of conduct is established, the reasonableness of an actor's conduct under the standard is a question for the factfinder, not the court." *Tallman v Markstrom*, 180 Mich App 141, 144; 446 NW2d 618 (1989). "However, if, on the basis of the evidence presented, reasonable minds could not differ, then the motion for summary disposition should be granted." *Vermilya v Dunham*, 195 Mich App 79, 83; 489 NW2d 496 (1992). The Court of

---

[4] As indicated by the Court of Appeals, plaintiff's complaint presented considerable ambiguity regarding the identity of the individual defendant "Richard Roe." Plaintiff's complaint did not specifically name Dr. Uy, and identified "Richard Roe" variously as a sheriff's department employee and a "deputy" responsible for the supervision of medical care of the prisoners. Nonetheless, the trial judge's written opinion apparently presumed that Roe was in fact Dr. Uy. The Court of Appeals noted that, because the plaintiff did not dispute this determination in his brief to that Court, it would "assume that the trial judge was correct." Likewise, because the defendant has not raised the issue, and the plaintiff has not appeared before us, we too will accept for the purposes of this decision the conclusion that Roe is in fact Dr. Uy.

Appeals cited both these cases in its analysis, and we agree that these established precedents form the boundaries of our review. Accordingly, our task is to review the facts, in the light most favorable to the plaintiff, and determine the appropriateness of summary disposition in favor of the defendant.[5]

### III

Plaintiff's complaint characterized defendant as a jail employee.[6] Plaintiff's claim of gross negligence against this employee is accordingly governed by § 7 of the GTLA, MCL 691.1407; MSA 3.996(107), which provides:[7]

> (1) Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.
>
> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a

[5] The trial court decided the instant matter under MCR 2.116(C)(7) and (10). Our review focuses on MCR 2.116(C)(7), which allows, inter alia, a motion for summary disposition based on an assertion that "[t]he claim is barred because of . . . immunity granted by law . . . ."

[6] The record, in fact, raises some question regarding the exact status of Dr. Uy, but this issue is not before us, and, accordingly, we accept plaintiff's characterization of defendant's position.

[7] Subsection 3 of this section was amended by the Legislature in 1996. Because this subsection deals with intentional torts, it is not relevant to the matter before us. Likewise, the 1996 addition of subsection 6, which provides for immunity to guardians ad litem when they are acting within the scope of their authority, is also not relevant to our question. The subsections that control this case remain identical to their form in 1991.

governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Subsection 2 governs our analysis. For summary disposition to have been appropriate on the basis of governmental immunity, Dr. Uy is required to have met all three conditions of that section. Regarding the first two, there is no dispute. The operation of a jail is clearly a governmental function,[8] and there has been no allegation that Dr. Uy was acting outside the scope of his authority when treating the plaintiff. Accordingly, we now turn to whether Dr. Uy's conduct could "amount to gross negligence that is the proximate cause of the injury or damage."

IV

As noted, the trial court had before it the depositions of Dr. Uy and the plaintiff's cellmate, Payne. Additionally, the record contains the depositions of

---

[8] See, e.g., *Jackson v Detroit*, 449 Mich 420; 537 NW2d 151 (1995).

Dr. Borenitsch, the ear, nose, and throat specialist to whom Dr. Uy referred the plaintiff, and Dr. Esclamado, the otolaryngologist who performed the surgery on the plaintiff. The Court of Appeals found that the trial court had erred in granting summary disposition on the basis of its reading of testimony in these latter two depositions.

The Court of Appeals observed that neither Dr. Borenitsch or Dr. Esclamado would offer an opinion regarding whether the plaintiff's cancer could have been diagnosed earlier than it was. However, it found the doctors' testimony to indicate that, minimally, a laryngoscopic examination[9] of plaintiff's throat was indicated on the basis of his four-month history of symptoms. We disagree with this latter characterization and regardless of its correctness, further disagree with the conclusion drawn by the Court of Appeals from this finding.

First, we note that this conclusion apparently was drawn from a question asked Dr. Borenitsch regarding whether the jail medical staff should have suspected cancer sooner on the basis of the plaintiff's symptoms. Dr. Borenitsch did not directly answer that question. Rather, he specifically noted, as he previously had done, that he could not testify with respect to the standard of care in the jail. As to the standard of care for an ear, nose, and throat practitioner, however, Dr. Borenitsch did indicate that he would have

---

[9] Dr. Borenitsch indicated in his deposition that a laryngoscopic examination involves advancing a flexible fiberoptic telescope through the nose and down the throat to allow the visualization of structures, such as the larynx, which are located farther down the throat and are not visible during an ordinary examination with a tongue depressor. His testimony indicated that the cancerous area of the plaintiff's throat was not visible without performing a laryngoscopic examination.

done a laryngoscopic examination sooner, and that after "a couple of months" of continuing symptoms like those the plaintiff described, he definitely felt that such an examination would be required.

Likewise, while Dr. Esclamado testified that, as an otolaryngologist, he would immediately suspect cancer, given the plaintiff's history, he was not prepared to render an opinion regarding the appropriateness of the care plaintiff received at the jail. Dr. Esclamado confined his testimony only to the general nature of the cancer and his area of specialized practice.

Accordingly, we conclude that no testimony was presented to support the Court of Appeals finding that a laryngoscopic examination should have been performed by Dr. Uy. In fact, there appears to be no expert testimony in the record that indicates Dr. Uy violated the standard of care with regard to a *negligence* standard. Which brings us to our second point of disagreement, the conclusion drawn by the Court of Appeals.

While the Court of Appeals correctly quoted the statutory definition of gross negligence, it found that a failure to perform a laryngoscopic examination was sufficient to raise a question regarding gross negligence. This, however, is contrary to the requirements of the statute. The statutory definition of gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

As we have noted, it appears that the deposition testimony offered to the trial court fails to raise a question whether the defendant even violated the standard of care applicable to him and therefore would be guilty of negligence. There is, however,

clearly no testimony at all offered to support a notion that his conduct would be so reckless as to demonstrate a substantial lack of concern for whether an injury results.

While the plaintiff is entitled to all reasonable inferences, we cannot find it reasonable to infer that, assuming arguendo that Dr. Uy should have referred the plaintiff for a laryngoscopic examination sooner,[10] his lack of doing so could demonstrate such a substantial lack of concern. The record does indicate that Dr. Uy continued to treat the plaintiff with a variety of medications, as well as administering various tests, and that Dr. Uy reacted with different treatments each time the plaintiff was seen by him. In such circumstances, we must agree with the trial judge that reasonable minds could not differ in concluding that Dr. Uy's conduct in the course of his treatment of the plaintiff could not amount to gross negligence as defined in the statute.

Lastly, we observe that our decision today is based on the statutory definition of gross negligence, and a finding that such a requirement cannot be met in this case.[11] We note in passing, however, that the statute

---

[10] There is no indication in the record that the equipment for a laryngoscopic evaluation would have been present at the jail infirmary, nor an indication whether such a procedure would be within the realm of practice for a primary care physician.

[11] Defendant has argued in his brief that under *Canon v Thumudo*, 430 Mich 326; 422 NW2d 688 (1988), the medical decisions made by Dr. Uy were "discretionary," and hence, protected by governmental immunity. The Legislature, however, as we indicated in *Canon* at 332, n 2, amended § 7 of the GTLA in 1986 to eliminate any distinction between discretionary and ministerial functions. The language now used is: "without regard to the discretionary or ministerial nature of the conduct in question . . . ." MCL 691.1407(2); MSA 3.996(107)(2). Hence, although we agree with defendant's argument that gross negligence cannot be shown in this case, we do not do so on the basis of *Canon* because the discretionary/

also requires that gross negligence be the proximate cause of plaintiff's injuries for liability to attach to the governmental defendants. On this point, as well, the deposition testimony presented to the trial court is lacking. Both Dr. Borenitsch and Dr. Esclamado declined to offer testimony concerning the difference detection of the plaintiff's cancer four months earlier might have made.

V

Accordingly, having found that plaintiff has raised no question on which reasonable minds could differ concerning gross negligence in defendant Dr. Uy's conduct, we conclude that the trial judge was correct in his grant of summary disposition in favor of Dr. Uy, and reverse that part of the Court of Appeals opinion that holds to the contrary.[12]

MALLETT, C.J., and BRICKLEY, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred with CAVANAGH, J.

---

ministerial rationale used there is no longer applicable to the statute as modified by the Legislature.

[12] Having not been called to review the balance of the Court of Appeals opinion, we do not reach any of the remaining issues addressed below.