# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF SUSAN K. ARRINGTON, by Co-Personal Representatives SARA ARRINGTON LACAVA and MATTHEW ARRINGTON

       Plaintiff-Appellant,

v

COUNTY OF LAKE, PALOMA INDUSTRIES OF NAGOYA JAPAN, RHEEM MANUFACTURING, EMERSON ELECTRIC COMPANY, FISHER CONTROLS INTERNATIONAL, INC., GRUNDFOS PUMPS CORP, TJERNLUND PRODUCTS, INC., A O SMITH CORP, REGAL BELOIT ELECTRIC MOTORS, INC., MICHAEL ELLIS, STEPHEN R. BOEHRINGER, TRECHA BROTHERS SUPPLY COMPANY, INC., GAS & LUBE EQUIPMENT REPAIR, INC., RESIDENTIAL IMAGES, INC., FARM BUREAU INSURANCE COMPANY OF MICHIGAN, MICHAEL DEAN GREEN, GREEN CONSTRUCTION, CRYSTAL FLASH LIMITED PARTNERSHIP OF MICHIGAN,

       Defendants,
and

PHELPS PLUMBING & HEATING, INC., NO-CHE-MO, INC., HERBERT B. PHELPS, also known as BRADLEY PHELPS, DAVID A. SHARLOW and KEVIN G. ELLIOT,

       Defendants-Appellees.

UNPUBLISHED
July 20, 2017

No. 332523
Lake Circuit Court
LC No. 14-008636-NO

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants Herbert B. Phelps, also known as Bradley Phelps,[1] No-Che-Mo, Inc., and Phelps Plumbing and Heating, Inc.[2]  We affirm.

On appeal, plaintiff first argues that the trial court erred in concluding that plaintiff's cause of action was time-barred by MCL 600.5839.  We disagree.

Where it is clear from the record that the trial court's basis for granting summary disposition was that plaintiff's action was barred by the applicable statute of limitations,[3] we review the trial court's decision as having granted summary disposition pursuant to MCR 2.116(C)(7).

> Pursuant to MCR 2.116(C)(7), a party may move to dismiss a claim on the grounds that the claim is barred by the applicable statute of limitations.  The question whether a cause of action is barred by the applicable statute of limitations is one of law, which this Court reviews de novo.  This Court also reviews de novo a trial court's decision regarding a summary disposition motion.  In reviewing whether a motion under MCR 2.116(C)(7) was properly decided, we consider all documentary evidence and accept the complaint as factually accurate unless affidavits or other appropriate documents specifically contradict it.  [*Frank v Linkner*, ___ Mich ___, ____; 894 NW2d 574 (2017) (Docket No. 151888); slip op at 5 (citations and quotation marks omitted).

The applicable statute of limitations, MCL 600.5839(1) provides, in pertinent part, as follows:

> A *person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property*, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, *or against any contractor making the improvement*, unless the action is commenced within either of the following periods:

---

[1] Herbert B. Phelps and H. Bradley Phelps are the same person.  For clarity of analysis, we will refer to this individual as "Phelps."  We will refer to defendants collectively as "defendants" in our analysis unless reference to an individual defendant is necessary.

[2] David A. Sharlow and Kevin G. Elliott were dismissed from the litigation by an order of the trial court entered March 15, 2016.  In their briefs on appeal, the parties note that all other defendants were also dismissed from this litigation in the trial court and are not parties to this appeal.

[3] Plaintiff initiated its lawsuit on March 17, 2014.

(a) *Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.*

(b) If the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, an action to which this subdivision applies shall not be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement. [Emphasis added.]

"By enacting MCL 600.5839, the Legislature chose to limit the liability of architects, engineers, and contractors in order to relieve them of the potential burden of defending against lawsuits commenced long after an improvement was completed." *Caron v Cranbrook Ed Community*, 298 Mich App 629, 636; 828 NW2d 99 (2012). Plaintiff does not dispute that defendants were "contractor[s]" as contemplated by MCL 600.5839(1), or that the work performed on plaintiff's decedent's property was "an improvement to real property" as set forth in the statute. More importantly, in its brief on appeal, plaintiff does not challenge the trial court's application of MCL 600.5839(1) as the appropriate and governing statute of limitations. Instead, plaintiff focuses its arguments on appeal on challenging (1) the trial court's determination with respect to when defendants last performed any work at plaintiff's decedent's home, (2) and how such a determination impacts the analysis of whether plaintiff's action is time-barred.

In *Beauregard-Bezou v Pierce*, 194 Mich App 388, 392-393; 487 NW2d 792 (1992), a panel of this Court, reviewing an earlier version of MCL 600.5839(1),[4] considered the issue whether "[the] plaintiff's claim was filed within six years of the time [the plaintiff] occupied, used or accepted the improvement" to her home, as contemplated by then MCL 600.5839(1).[5] In that case, the plaintiff fell and fractured her hip on a staircase that the defendant residential building contractor had constructed in her home. *Beauregard-Bezou*, 194 Mich App at 390. In *Beauregard-Bezou*, the plaintiff conceded that she had occupied and used her home for more than six years before falling, but the plaintiff maintained that she had not "accepted" the improvement. *Beauregard-Bezou*, 194 Mich App at 392. The *Beauregard-Bezou* Court cited an earlier decision from this Court, *Fennell v John J Nesbitt, Inc*, 154 Mich App 644, 649; 398 NW2d 481 (1986), stating, in pertinent part, as follows:

We do not read MCL 600.5839 as a "discovery" statute of limitations. Rather, we find that its operation is predicated upon the time of occupancy *or* use

---

[4] As pertinent to this appeal, the substantive language at issue remains the same and has not been altered.

[5] The applicable statutory provision is now MCL 600.5839(1)(a).

-3-

*or* acceptance of the improvement. [*Beauregard-Bezou*, 194 Mich App at 392 (emphasis in original).][6]

Specifically, the *Beauregard-Bezou* Court noted its agreement with the *Fennell* panel's conclusion that "the operation of [then MCL 600.5839(1)] is predicated upon the time of occupancy, *or* use *or* acceptance[ ]" of the real property at issue. *Beauregard-Bezou*, 194 Mich App at 393. The *Beauregard-Bezou* Court ultimately rejected the plaintiff's contention that "the period [of limitation] only begins to run at the time of the latest of the three contingencies [listed in the statutory language]." *Id*. at 393-394.

In this case, the record reflects, and the parties do not dispute, that plaintiff's decedent was issued a certificate of occupancy for her new home on September 6, 2005.[7] Therefore, the six-year limitation period would have begun to run at "the time of occupancy of the completed improvement[.]" MCL 600.5839(1)(a). While the record is unclear with regard to when plaintiff's decedent actually occupied the home, the record does not suggest it was anything but contemporaneous with the issuance of the certificate of occupancy. Plaintiff notes in its brief on appeal that defendants visited plaintiff's new home on two separate occasions in January 2006 and December 2006 to perform additional work and repairs on the heating system in plaintiff's decedent's home. According to plaintiff, the limitation period set forth in MCL 600.5839(1)(a) did not start to run until the latter of the two occasions, December 20, 2006, when additional work was completed on plaintiff's decedent's water heating system. In support of its argument, plaintiff contends that in the time following the issuance of the certificate of occupancy on September 6, 2005, defendants "had an ongoing relationship with [plaintiff's decedent] to maintain and supervise the heating system for years after it was installed."

We note that in his January 28, 2016 affidavit, Phelps, president of Phelps Plumbing and Heating, Inc., averred that Phelps Plumbing and Heating, Inc. "made certain changes to the [heating] system that [plaintiff's decedent] had requested[ ]" after the certificate of occupancy was issued. Specifically, plaintiff's decedent informed Phelps Plumbing and Heating, Inc. on or about January 18, 2006 that a representative from Paloma, a company on whose behalf plaintiff's decedent sold heating products, "wanted some piping for the boiler placed further apart." The reason for the work was ostensibly to improve the efficiency of the heating system. The requested work was performed and plaintiff's decedent was billed accordingly. The record also reflects that a service technician, Chuck Carmoney, visited plaintiff's decedent's home on December 20, 2006, on behalf of Phelps Plumbing and Heating, Inc., after plaintiff's decedent contacted Phelps Plumbing and Heating, Inc. stating that her hot water system was not operative. When the service technician arrived at plaintiff's decedent's home, "the hot water system had already started working and therefore [Phelps Plumbing and Heating, Inc.] did not need to do anything to [the hot water system] at that time." Therefore, on December 20, 2006, Phelps

---

[6] While *Fennell* addressed a prior version of MCL 600.5839 that did not include a provision addressing gross negligence, this does not impact our analysis.

[7] From the record, it appears that the majority of the work performed by defendants was initiated in mid-to-late 2004 and carried over into the spring of 2005.

Plumbing and Heating, Inc. "made no improvements to the water system and in fact did nothing to it[,]" and plaintiff's decedent was merely charged $40 for a "service call[.]" It also appears from the record that a representative from Phelps Plumbing and Heating, Inc. visited plaintiff's decedent's home in October of 2008, apparently to perform additional work, but the specific nature of the work is unclear from the record.

Even accepting plaintiff's assertions that Phelps Plumbing and Heating, Inc. visited plaintiff's decedent's home in January 2006 and December 2006 to perform additional work on the heating system, the relevant statutory language clearly provides that any wrongful death action needed to be commenced "[s]ix years after the time of occupancy of the completed improvement, use or acceptance of the improvement." MCL 600.5839(1)(a). From the record, it is clear that any subsequent visits Phelps Plumbing and Heating, Inc. made to plaintiff's decedent's home following the issuance of the certificate of occupancy on September 6, 2005 were for repairs or service calls, and there is nothing in the record to indicate that these subsequent visits or any additional work performed impacted plaintiff's decedent's "use, or acceptance of the improvement." MCL 600.5839(1)(a). Therefore, contrary to plaintiff's assertions in its brief on appeal, where the statute of limitations had expired well before plaintiff's decedent's tragic death on December 27, 2012, MCL 600.5852[8] simply does not apply to allow plaintiff's claims to proceed. Consequently, while the trial court employed different reasoning in reaching its conclusion, its ultimate determination that plaintiff's cause of action was time-barred is nonetheless correct. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998) (recognizing that "[w]hen this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning.")

To the extent that plaintiff further asserts that the trial court erred in concluding that defendants were not grossly negligent, MCL 600.5839(1)(b), we again disagree.

As plaintiff acknowledges in its brief on appeal, gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a); see also *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). One can be said to be grossly negligent when an objective observer could conclude that "the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (footnote and citation omitted).

We recognize that plaintiff presented the February 16, 2016 affidavit of their expert, A. James Partridge, who averred that defendants "failed to satisfy the standards of care applicable to

---

[8] MCL 600.5852(1) provides, in pertinent part, as follows:

> (1) If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

to a licensed plumbing/mechanical contractor in their installation of the water heater." Partridge further concluded that defendants failed to comply with applicable building codes and the water heater's installation manual. Noting that defendants were grossly negligent in the installation of the water heating system, Partridge averred, in pertinent part, as follows:

> I have concluded that Phelps Plumbing and Heating, Inc., and their employees failed to satisfy the codes and the water heater manufacturer[']s instructions by (1) installing a water heater to perform the function of a boiler. . . . (2) not connecting the 2 water heater flues to a gas vent or chimney, (3) not terminating the flue at least 2 feet above the highest point of any portion of the building within a horizontal distance of 10 feet, (4) not protecting the flue passing through the wood rim joist with a non-combustible material, (5) terminating the flues in the wind pressure drift area, (6) not designing and constructing a venting system to develop a positive flow adequate to remove flue gases to the outside, (7) not installing a low-water cut-off, (8) not installing temperature/pressure gauge, and (9) terminating flue gas within 3 feet of opening door [sic].

> * * *

> Phelps Plumbing and Heating, Inc., and their employees installed a water heater not suited for the application and contrary to the codes and standards noted above, which resulted in the heat exchanger failure and carbon monoxide poisoning death of [plaintiff's decedent].

In his January 28, 2016 affidavit, Phelps averred that plaintiff's decedent "wanted to use her own supplies and equipment for the [heating] system" and that plaintiff's decedent supplied "the hot water heaters, exhaust fan and piping and vents for the system." Phelps further averred, in pertinent part, as follows:

> That I was aware that [plaintiff's decedent] was a dealer for Paloma products. I had known [plaintiff's decedent] for a number of years. She had indicated that because she was a dealer for [Paloma's] products, she wanted to use their products, with respect to the [heating] system in her home. [Plaintiff's decedent] indicated that her company, which she and her brother owned, sold and serviced Paloma parts. She also gave me instructions on how the parts were to [be] install[ed] and indicated that she had conferred with a Paloma representative with respect to the installation of the parts and equipment she supplied from Paloma.

No-Che-Mo, Inc.[9] then installed the two hot water heaters, exhaust fan, piping and vents and other HVAC parts and materials that were supplied by [plaintiff's decedent].

\* \* \*

. . . [Plaintiff's decedent] informed us that one of the Paloma boilers, that looked like a domestic hot water heater, wasn't large enough and wasn't doing the job. She then supplied a larger hot water heater, which I then installed on behalf of No-Che-Mo, [Inc.] per the specifications that [plaintiff's decedent] had supplied. In addition, an extra pump was installed for the new hot water heater she supplied. [Footnote added.]

According to Phelps, before the property underwent an inspection by an inspector for the County of Lake, plaintiff's decedent informed him that a representative of Paloma had "done the initial start-up of the HVAC system and had made adjustments to the HVAC system to get it ready for an inspection by the County Inspector." Phelps further averred that additional work was completed on January 18, 2006 at plaintiff's decedent's request where "[plaintiff's decedent's] Paloma representative wanted some piping for the boiler placed further apart." After December 20, 2006, Phelps would occasionally cross paths with plaintiff's decedent in the community, and "[plaintiff's decedent] would inform [Phelps] how happy she was with her [heating] system, how well it was doing and how low her heating bills were. Also, [plaintiff's decedent] was trying to get [Phelps] to promote the Paloma products that her company sold[ ] . . . ." Phelps noted in his affidavit that after plaintiff's decedent's death, when he visited her home, he noticed several items that "were missing and/or not present and/or different than when the [heating] system was inspected by [Lake County]." Specifically, Phelps averred, in pertinent part, as follows:

The pump, check valve and relay (for turning the pump on and off) for the Paloma hot water heaters were gone.

The high limit controller was gone.

The draft hood unit was gone.

The wiring for the controller, pump and check valve were missing. There were open boxes of wiring everywhere.

The original piping and heater had been re-worked and a different heater was installed. The old heater was sitting on the floor.

---

[9] According to the record, No-Che-Mo, Inc. was a predecessor entity for Phelps Plumbing and Heating, Inc.

The home was sprayed with foam insulation, which was evidenced by foam on the piping we installed.

The front door to the home had been relocated between the time the first unit was installed and the second unit was installed.

Phelps continued to aver that "all work I performed was done in accordance with HVAC code and/or the instructions I received from [plaintiff's decedent]. . . . That I . . . installed the material and equipment received and supplied by [plaintiff's decedent] in accordance with the instructions she gave me and that the HVAC system was inspected and passed the inspection by the [Lake] County Inspector, Peter Nammensma."

Viewing the record evidence in its entirety, we are not persuaded that it supports a reasonable conclusion that defendants "did not care about the safety or welfare" of plaintiff's decedent or others when undertaking the installation of plaintiff's decedent's heating system. *Tarlea*, 263 Mich App at 90. Moreover, the record evidence does not establish that defendants engaged in conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to [plaintiff's decedent or others]." *Xu v Gay*, 257 Mich App 263, 271; 668 NW2d 166 (2003). Rather, the record evidence reflects that plaintiff's decedent and defendants acted cooperatively in a manner to assemble her heating system, and we are not persuaded that defendants' conduct rose to the level of gross negligence as a matter of law. See *Jackson v Co of Saginaw*, 458 Mich 141, 146; 580 NW2d 870 (1998) (recognizing that a court may determine issues of gross negligence where reasonable minds could not differ on the issue).[10] Accordingly, the trial court correctly determined that MCL 600.5839(1)(b) was not applicable under the circumstances of this case, and summary disposition was properly granted pursuant to MCR 2.116(C)(7).

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh

---

[10] Plaintiff argues in its brief on appeal that the record establishes that Phelps Plumbing and Heating, Inc. "was not simply taking instruction and material from [plaintiff's decedent], but that it was involved in the design and installation of the system itself." We note that any factual disputes on this discrete issue are not dispositive in our ultimate conclusion that the record does not support a finding of gross negligence on the part of defendants.