# STATE OF MICHIGAN

# COURT OF APPEALS

ADRIANA GREENIA, a Minor, by Next Friend,
CATHY GREENIA,

UNPUBLISHED
November 2, 2017

Plaintiff-Appellee,

v

No. 332841
St. Clair Circuit Court
LC No. 2015-001069-NO

MICHAEL PFEIFFER,

Defendant-Appellant.

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Adriana Greenia, then age 13, suffered a catastrophic spinal injury when she crashed her motorbike while attempting to jump two small hills on a backyard track owned by defendant Michael Pfeiffer. Two statutes within the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*, govern Adriana's negligent supervision claim against Pfeiffer.

The two provisions make it difficult for injured plaintiffs to pursue negligence claims against landowners whose recreational property is the site of an injury. The Recreational Land Use Act (RUA), MCL 324.73301 *et seq.*, forecloses liability "unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner[.]" MCL 324.73301(1).[1] In addition, the RUA decrees that people who engage in riding motorbikes "accept[] the risks associated with that sport insofar as the dangers are inherent." MCL 324.81133(3). The circuit court focused on whether the facts established a triable issue regarding Pfeiffer's gross negligence, and concluded that they did. We granted Pfeiffer's application for leave to appeal. *Greenia v Pfeiffer*, unpublished order of the Court of Appeals, entered August 24, 2016 (Docket No. 332841).

The risk Adriana accepted when she rode her motorbike on the track included that she could fall from the bike when trying to jump hills. Because Adriana accepted that risk, Pfeiffer had no duty to warn her of the risk of jumping the hills. While Adriana did not assume the risk of conduct on Pfeiffer's part that was so reckless as to demonstrate a substantial lack of concern

---

[1] The RUA is part of the NREPA.

-1-

for whether she would suffer an injury, the record provides no evidence that Pfeiffer's conduct met that standard. Accordingly, we reverse and remand for entry of summary disposition in Pfeiffer's favor.

I

In 2012, Adriana Greenia's stepfather, Jeff Berger, bought Adriana a motorbike and taught her to ride it. The parties refer to Adriana's vehicle as a dirt bike, as will we in the balance of this opinion. Berger and his adult children frequently rode dirt bikes. In fact, Berger sold Pfeiffer the land on which Adriana was injured, which included a trail for riding dirt bikes.

Adriana rode her dirt bike on Pfeiffer's track twice before her accident. On the day she was injured, Adriana and Berger's two adult children, Jake and Jessica, rode to Pfeiffer's property (Jessica rode a four-wheeler rather than a dirt bike). They asked for and received permission to use the track. Pfeiffer sat on a swing inside the track and watched Adriana and the Bergers ride.

Jake proposed that Adriana jump two small hills on the track. Pfeiffer heard this conversation; in his view, Jake was "egging" Adriana to try the jump. Adriana's deposition testimony was consistent with this description. Twice, Adriana and her dirt bike merely rolled over the hills. On her third attempt, she cleared the first hill but crashed into the second, flipping over the handlebars. Tragically, she sustained a spinal injury resulting in paraplegia.

Adriana's mother commenced this lawsuit as her next friend. In relevant part, the complaint alleges that Pfeiffer was grossly negligent or engaged in willful or wanton misconduct by failing to warn Adriana of the dangers on the track, and by failing to properly supervise her ride. Pfeiffer moved for summary disposition under MCR 2.116(C)(10), contending that § 81133(3) of the RUA barred Adriana's claim because she had assumed the risks of riding on the track, and because he was not grossly negligent or willfully careless of her safety. The circuit court denied Pfeiffer's motion, ruling without elaboration that a question of fact existed regarding whether Pfeiffer had been grossly negligent.

II

We review de novo a lower court's summary disposition ruling. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open

-2-

an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher*, 300 Mich App at 139-140.]

We also review de novo matters of statutory interpretation. *Stanton v City of Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002). The goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008). To that end, the first step in determining legislative intent is the language of the statute. *Id.* If the statutory language is unambiguous, then the Legislature's intent is clear and judicial construction is neither necessary nor permitted. *Id.* [*Barclae v Zarb*, 300 Mich App 455, 466-467; 834 NW2d 100 (2013).]

III

The Recreational Use Act "was designed to restrict suits by persons coming upon the property of another for [recreational] purposes, and to declare the limited liability of owners of property within this state." *Ballard v Ypsilanti Twp*, 457 Mich 564, 577; 577 NW2d 890 (1998) (quotation marks and citation omitted). The Supreme Court has characterized the RUA as "a 'liability-limiting' " enactment. *Id.* By design, it reduces litigation exposure with the goal of "encourag[ing] landowners to open their property to others for recreation." *Id.*

Part 811 of the NREPA, within the RUA, concerns off-road recreational vehicles. It labels the dirt bike ridden by Adriana as an "ORV," technically defined as "a motor-driven off-road recreation vehicle capable of cross-country travel without benefit of a road or trail . . . ." See MCL 324.81101(u). A number of statutes in Part 811 regulate ORV use. The regulatory scheme contemplates that minors riding ORVs will do so only "under the direct visual supervision of an adult" and that the child will have in her possession "an ORV safety certificate." MCL 324.81129(1).[2] Despite mandating these safety precautions, MCL 324.81133(3) specifies that those "who participate[] in the sport of ORV riding accept[] the risks associated with that sport insofar as the dangers are inherent." Inherent dangers "include but are not limited to":

> injuries to persons or property that can result from variations in terrain; defects in traffic lanes; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; and collisions with fill material, decks, bridges, signs, fences, trail maintenance equipment, or other ORVs. [*Id.*]

---

[2] Adriana did not have a safety certificate. MCL 324.81129(4) provides that "the owner or person in charge of an ORV shall not knowingly permit the vehicle to be operated by a child less than 16 years of age unless the child is under the direct visual supervision of an adult and the child has an ORV safety certificate in his or her immediate possession." Pfeiffer neither owned Adriana's dirt bike or was "in charge" of it during her ride.

-3-

The Legislature excluded from the risks assumed by a rider "injuries to persons or property that result from the use of an ORV by another person in a careless or negligent manner likely to endanger person or property." *Id*.

Based on this liability-limiting provision, we conclude that as a matter of law, Adriana accepted the risk that she could be injured by attempting to jump the small hills. Our Supreme Court has made clear that the RUA applies "regardless of age, i.e., even when minors are injured." *Woodman v Kera LLC*, 486 Mich 228, 291; 785 NW2d 1 (2010) (opinion by MARKMAN, J.). When a participant—even a minor—accepts the inherent risk of a sporting activity, she is precluded from recovery for injuries that may result from her participation. See *Anderson v Pine Knob Ski Resort, Inc*, 469 Mich 20, 21-22; 664 NW2d 756 (2003) (involving a similarly worded provision of Michigan's Ski Area Safety Act, MCL 408.321 *et seq*.). Thus, Pfeiffer had no duty to warn Adriana of the risks of jumping the hills.

Adriana's complaint raises a second claim, that Pfeiffer's failure to supervise her ride constituted gross negligence. MCL 324.73301(1) "exempts an owner of land from liability for injuries suffered by a person while that person is using the owner's land for specified purposes if that person has not paid the owner a valuable consideration for such use, unless the injuries were caused by the owner's gross negligence or willful and wanton misconduct." *Neal v Wilkes*, 470 Mich 661, 671; 685 NW2d 648 (2004). Under the highly specific circumstances presented in this case, we find MCL 324.73301(1) inapplicable.

According to Adriana's counsel, Pfeiffer should have stopped Adriana from attempting the jump. However, we have been provided with no authority establishing that Pfeiffer had a duty to supervise Adriana. Assuming without deciding that such a duty existed, we discern no evidence that would support a finding that Pfeiffer behaved in a manner consistent with Michigan's gross negligence standard.

Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003) (quotation marks and citation omitted). "Evidence of ordinary negligence is insufficient to create a material question of fact regarding the existence of gross negligence. The issue of gross negligence may be determined by summary disposition only where reasonable minds could not differ." *Woodman v Kera, LLC*, 280 Mich App 125, 152; 760 NW2d 641 (2008) (citations omitted). To demonstrate that a defendant was grossly negligent, a plaintiff must present evidence of more than mere ordinary negligence. *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). In fact, the challenged conduct must be "substantially more than negligent." *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006).

> [G]ross negligence . . . suggests . . . almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

"Generally, once a standard of conduct is established, the reasonableness of an actor's conduct under the standard is a question for the factfinder, not the court." *Tallman v Markstrom*, 180

Mich App 141, 144; 446 NW2d 618 (1989), cited approvingly in *Jackson v Saginaw Co*, 458 Mich 141, 146; 580 NW2d 870 (1998). "However, if, on the basis of the evidence presented, reasonable minds could not differ, then the motion for summary disposition should be granted." *Jackson*, 458 Mich at 146 (quotation marks and citation omitted).

Here, reasonable minds could not differ regarding whether Pfeiffer's conduct rose to the level of gross negligence.[3] Adriana had ridden on the track twice before, and her adult stepbrother (who was far more knowledgeable about her skills and training than was Pfeiffer) encouraged her to try the jump. Adriana has presented no testimony or evidence that had Pfieffer attempted to intervene, she would have abandoned her efforts to make the jumps. Viewed in the light most favorable to Adriana, Pfeiffer acquiesced in the jump rather than encouraged it. He expressed concern for the safety of all riders on his track, insisted that they wear helmets and other protective gear, and watched them closely as they rode. This conduct is far removed from a substantial lack of concern for Adriana's safety.

Moreover, "[s]imply alleging that an actor could have done more is insufficient under Michigan law, because with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea*, 263 Mich App at 90. "[S]aying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent." *Id*. Adriana has produced no evidence that any supervision responsibilities that Pfeiffer assumed were performed so deficiently as to equate with a lack of concern for Adriana's safety.

We reverse the circuit court's summary disposition ruling and remand for entry of judgment in favor of Pfeiffer. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

---

[3] Adriana's brief on appeal does not include any argument supporting a finding of willful or wanton misconduct.