## BALLARD v YPSILANTI TOWNSHIP

Docket Nos. 106941, 106954. Argued March 4, 1998 (Calendar No. 10).
Decided June 9, 1998.

Sheniece Ballard, as personal representative of the estate of Kassim
Ballard, deceased, Dorothy J. Wilkes and Edna Reid, copersonal
representatives of the estate of Anthony Deon Wilkes, deceased,
brought an action in the Washtenaw Circuit Court under the recrea-
tional land use act, MCL 300.201; MSA 13.1485, against Ypsilanti
Township, alleging liability for the decedents' drowning while wad-
ing in a man-made lake in a township park. The court, Melinda
Morris, J., denied the defendant's motions for summary disposition
that were based on governmental immunity. Thereafter, the court,
Donald E. Shelton, J., entered judgment on a jury verdict for the
plaintiffs. The Court of Appeals, WAHLS, P.J., and HOOD and M. E.
CLEMENTS, JJ., reversed in an opinion per curiam, holding that the
governmental tort liability act controlled (Docket No. 173829). The
plaintiffs appeal and the defendant cross appeals.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT,
and Justices CAVANAGH and BOYLE, the Supreme Court *held*:

The recreational land use act was not intended to waive the
state's immunity from liability and does not create an exception to
governmental immunity.

1. While the government tort liability act contains several excep-
tions to governmental immunity, others exist outside the act. The
Legislature, in enacting a law, cannot bind future Legislatures, and
remains free to amend or abolish governmental immunity by creat-
ing exceptions, either within the act or in the context of another
statute.

2. There is no conflict between the recreational land use act and
the governmental tort liability act. The governmental tort liability
act limits liability on government-owned property, and the recrea-
tional land use act limits liability on privately owned property. They
do not both apply to the same property, although they share the
common purpose of limiting liability. Even if they did apply to the
same property, they would not materially conflict.

3. Examining the purpose underlying the recreational land use
act and the circumstances surrounding its passage, it is clear that

the Legislature did not intend the act to waive the state's immunity from liability. On its face, the act applies only to owners, tenants, or lessees of land, and does not define those terms to include governmental entities. There is no express waiver of governmental immunity from liability under the act, because the act does not define the persons to whom it applies to include either the state or its political subdivisions. No necessary inference that the Legislature intended to waive immunity arises from the act.

Justice TAYLOR, joined by Justices BRICKLEY and WEAVER, concurring, stated that the recreational land use act does not apply to the land in question because it does not apply to public lands. Thus, the act could not create an exception to the governmental tort liability act. Further, there was no waiver of the governmental immunity defense.

Affirmed.

216 Mich App 545; 549 NW2d 885 (1996) affirmed.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett*), for plaintiff-appellant Ballard.

*Joseph DeVal Welton* and *Alvin L. Keel* for plaintiff-appellant Wilkes.

*Garan, Lucow, Miller, Seward & Becker, P.C.* (by *Rosalind Rochkind* and *Thomas F. Myers*), for defendant-appellee cross-appellant Ypsilanti Township.

Amicus Curiae:

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani* and *Mary Massaron Ross*), for Michigan Municipal League and Michigan Townships Association.

KELLY, J. We granted leave to appeal in this case to determine the effect of the recreational land use act (RUA), MCL 300.201; MSA 13.1485, on the governmental tort liability act (GTLA), MCL 691.1407(1); MSA 3.996(107)(1). The plaintiffs' decedents drowned while wading in a man-made lake in a township park.

Specifically, we are asked to decide if the recreational land use act creates an exception to the governmental immunity created by the GTLA. We hold that the act was not intended to waive the state's immunity from liability and does not create an exception to governmental immunity. Therefore, we affirm the result reached by the Court of Appeals, but for different reasons.

I

The Court of Appeals summarized clearly the tragic events giving rise to this action:

> On July 4, 1991, plaintiffs' decedents, Kassim Ballard, age eleven, and Anthony Wilkes, age twelve, were taken with a group of boys to Ford Lake Park in Ypsilanti by two adults, Haratio Blacksher and Veronica Mitchell. Although Mitchell told the boys not to go swimming, Blacksher allowed them to go into the water. The boys were nonswimmers. Ballard was in the water about ten to twelve feet out when he lost his footing. Wilkes went to help him and they both struggled. Blacksher went into the lake. All three went under. Blacksher emerged, but the boys drowned.
>
> Off the shore of the lake where the boys drowned, the water was twenty to twenty-four inches deep for a length of about twelve feet. At that point, the water turned mucky and the depth dropped to 3½ feet. At thirteen feet from the shore, the water was six feet deep. Defendant township runs Ford Lake Park. A 1983 study of the lake noted the existence of hazardous drop-offs. [216 Mich App 545, 546-547; 549 NW2d 885 (1996).]

The boys' estates sued Ypsilanti Township and two park caretakers individually. The trial court denied Ypsilanti's motions for summary disposition based on governmental immunity, and allowed the case to go to a jury. The jury awarded $1 million to Ballard's estate, and $400,000 to Wilkes' estate reduced by

twenty-five percent for comparative fault. The trial court denied motions for judgment notwithstanding the verdict and new trial.

The Court of Appeals reversed, holding that the township was immune from liability. The panel held that the GTLA controlled because it had been more recently enacted than the recreational land use act. It reasoned that the Legislature was aware of the recreational land use act, but did not make an exception for it. Hence, it did not intend to waive the state's immunity from liability.

Plaintiffs raise a question of law, which we review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

II

There are two statutes at issue in this case. First is the GTLA, which provides a broad grant of governmental immunity, subject to several statutory exceptions. The second is the recreational land use act, which limits landowner liability, except in cases of gross negligence or wilful and wanton misconduct. The issue before the Court is whether the recreational land use act applies to government-owned lands in such a way as to subject the township to liability for its wilful and wanton behavior.

A. GOVERNMENTAL IMMUNITY

The term "governmental immunity" derives from "sovereign immunity," and although the two are often used interchangeably, they are not synonymous. Sovereign immunity refers to the immunity of the state from suit and from liability, while governmental

immunity refers to the similar immunities enjoyed by
the state's political subdivisions. *Ross v Consumers
Power Co (On Rehearing)*, 420 Mich 567, 596-597; 363
NW2d 641 (1984).[1] In the present case, although gov-
ernmental immunity is at issue because plaintiffs seek
to hold a township liable, there is no reason to distin-
guish sovereign immunity. The recreational land use
act does not provide different standards for the state
and its political subdivisions.

From the time of its creation, Michigan has enjoyed
sovereign immunity, because "the state, as creator of
the courts, was not subject to them or their jurisdic-
tion." *Id.* at 598. This immunity is waived only by leg-
islative enactment. In early times, one seeking to
recover against the state would have to obtain a
waiver of immunity from suit from the Legislature. *Id.*
Later, as the number of claims increased to where
legislative attention to each became unwieldy, the
Legislature waived immunity from suit by creating
various agencies to deal with the claims. *Id.* at 598-
600.

### B. GOVERNMENTAL TORT LIABILITY ACT

In 1964, the Legislature codified common-law sov-
ereign immunity to liability and put all then-existing
legislative exceptions in one place by enacting the
governmental tort liability act. MCL 691.1401 *et seq.*;
MSA 3.996(101) *et seq.* The GTLA states in part:

> Except as otherwise provided in this act, all governmen-
> tal agencies shall be immune from tort liability in all cases

---

[1] Immunity from suit and immunity from liability are different protec-
tions. *Ross, supra* at 600-601. Immunity from suit refers to the immunity
of the state and its subdivisions from being hailed into one of its courts
without its consent. *Id.*

wherein the government agency is engaged in the exercise
or discharge of a governmental function. [MCL 691.1407(1);
MSA 3.996(107)(1).]

By the "[e]xcept as otherwise provided in this act"
language, the GTLA proclaims to contain *all* exceptions
to governmental immunity. While the GTLA does con-
tain several of those exceptions, others exist outside
the act. This is so because the Legislature, in enacting
a law, cannot bind future Legislatures. *Malcolm v
East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991),
citing *Harsha v Detroit*, 261 Mich 586; 246 NW 849
(1933). As a result, it remains free to amend or abol-
ish governmental immunity by creating exceptions to
it, either within the GTLA, or in the context of another
statute.

In the present case, plaintiffs brought suit against
Ypsilanti Township under the recreational land use
act, and the township responded by asserting govern-
mental immunity under the GTLA. Plaintiffs argue that
the defense of governmental immunity from liability
must fail because the recreational land use act is one
of the statutorily created exceptions to GTLA
immunity.

The issue whether the recreational land use act cre-
ates a statutory exception to governmental immunity
is one of first impression. In the past we have
examined the meaning, history, and purpose of the
recreational land use act. However, we have reserved
opinion, until today, on whether it creates liability for
a political subdivision of the state.[2]

---

[2] As we noted in *Wymer v Holmes*, 429 Mich 66, 78, n 15; 412 NW2d 213
(1987):

### C. WAIVER

Before we reach the merits of the governmental immunity defense, we first respond to plaintiff Ballard's argument that the township waived that defense in the present case.

Plaintiff Ballard argues that defendant waived its defense of governmental immunity essentially by admission. To establish the waiver, she quotes the following passage from one of defendants' briefs:

"Plaintiff therefore is left with one method upon which the cloak of immunity may be removed as it concerns the Township and Co-Defendants Brinker and Cooper under [the] Recreational Use Act. The theory Plaintiff must prove is that the Plaintiffs' decedents died as a result of willful and wanton misconduct on the part of the Defendants."

In an effort to convince the Court that the township waived the defense of governmental immunity, plaintiff Ballard has chosen to take the quoted material out of context. The "cloak of immunity" to which defendant referred was that provided by the recreational land use act, not the GTLA. In the sentences preceding the quoted language, it is clear that defendant is referring to the immunity from liability for negligence

---

This Court has not directly addressed the question whether public land is covered by the RUA. In *Burnett v City of Adrian*, 414 Mich 448; 326 NW2d 810 (1982), this Court held that plaintiff's claim stated a cause of action for wilful and wanton misconduct under the RUA without first considering the applicability of the statute to a reservoir owned by a city, an issue never briefed nor raised in that case.

It is not necessary for the Court to determine whether public land is covered by the RUA at this time. However, arguments in favor of limiting the application of the RUA to private land have been made. Thompson & Dettmer, *Trespassing on the recreational user statute*, 61 Mich B J 726 (1982).

granted by the recreational land use act. It is not referring to governmental immunity under the GTLA.

Plaintiff Ballard also asserts as error the failure of the Court of Appeals to address this issue. We assume that the Court of Appeals did not respond to plaintiff's waiver argument for the same reason we find the argument unpersuasive: it is without merit. Defendant did not waive its defense of governmental immunity, but raised the defense in its answer and has continued to raise it at each level, including in its brief and argument before this Court.

### D. JUDICIALLY CREATED EXCEPTION TO GTLA IMMUNITY

Plaintiff Wilkes also raises an argument which, if successful, would make it unnecessary for us to weigh the merits of the immunity analysis as between the two statutes. Plaintiff argues that there is a judge-made exception to GTLA immunity for suits under the recreational land use act. Section 7 of the GTLA provides in part that the "act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed." MCL 691.1407(1); MSA 3.996(107)(1). In *Li v Feldt (After Remand)*,[3] this Court held that the portion of § 7 quoted above preserved a common-law tort action against the state. Plaintiff Wilkes argues that, because the Court decided *Heider v Michigan Sugar Co*,[4] under the recreational land use act before July 1, 1965, a common-law action existed before the effective date of the GTLA and survived its enactment. We disagree.

---

[3] 434 Mich 584, 591-594; 456 NW2d 55 (1990).
[4] 375 Mich 490; 134 NW2d 637 (1965).

According to *Li*, § 7 of the GTLA preserved judicially created exceptions that existed before July 1, 1965. The decision in *Heider* was not a judicially created exception to governmental liability. It did not involve governmental immunity at all, but was a suit against a private property owner. Moreover, a decision that merely upholds the application of a statute, without more, does not create a common-law cause of action or result in a judicially created exception to immunity.

### III. LEGISLATIVE ANALYSIS

Having decided that defendant has not waived its defense of governmental immunity and that no common-law exception exists in this context, we turn to plaintiffs' substantive argument: The Legislature intended to subject the state to liability by the enactment of the recreational land use statute.

We agree with the Court of Appeals that plaintiffs' statutory construction arguments fail. Plaintiffs urge that the rules of statutory construction control the outcome of this issue. They recite the familiar rule that, where two statutes apply to the same subject and one is general and the other specific, the specific statute should control. According to plaintiffs, the GTLA is the general act, and the recreational land use act is the more specific, making the latter an exception to the general grant of immunity under the GTLA. The Court of Appeals disagreed, holding instead that the recreational land use act is the general statute and the GTLA the specific.

The Court of Appeals went on to use a different rule of statutory construction, pointing out that, when two statutes conflict, the later is said to have

amended the earlier. 216 Mich App 550, citing *Shirilla v Detroit*, 208 Mich App 434; 528 NW2d 763 (1995). Applying this rule, the panel found that the later-enacted GTLA conflicted with the earlier recreational land use act. Because the GTLA purported to contain all exceptions to governmental immunity, but did not make an exception for recreational land use liability, the panel held that the township was immune.

The Court of Appeals was correct in concluding that the township is immune from liability in this case. However, we reach this conclusion with a slightly different analysis. While the Court of Appeals applied the rules of statutory construction because it found the RUA and the GTLA to be in conflict, we find no conflict between the statutes. The GTLA limits liability on government-owned property and the RUA limits liability on privately owned property. They do not both apply to the same property, although they share the common purpose of limiting liability. Consequently, even if they did apply to the same property, they would not materially conflict. This statutory analysis is part of the broader analysis we undertake in determining whether a legislatively created exception to governmental immunity exists. Proper resolution of this question involves applying our longstanding rule for statutory waivers of governmental immunity, as recognized in *Mead v Public Service Comm*, 303 Mich 168; 5 NW2d 740 (1942).

## IV. GOVERNMENTAL IMMUNITY

Recently, we had the opportunity to address the issue of statutory exceptions to governmental immunity in *Anzaldua v Band*, 457 Mich 530; 578 NW2d 306 (1998). There, we reaffirmed the rule from *Mead*

*v Public Service Comm, supra,* that governs statutory
waivers of governmental immunity:

> The doctrine of sovereign immunity has long been firmly
> established in the common law of this State, and it may not
> be held to have been waived or abrogated except that result
> has been accomplished by an express statutory enactment
> or by necessary inference from a statute. [*Id.* at 173.]

### A. EXPRESS STATUTORY ENACTMENT

The question whether there is an express statutory
enactment subjecting the state to liability is answered
simply by referring to the language of the statute
itself. In *Anzaldua,* we held that the Legislature
intended to create an exception to sovereign immu-
nity from liability in the Whistleblowers' Protection
Act (WPA),[5] because it included the state among the
bodies subject to the act. The WPA governs
"employer[s]" and defines "employer" to include the
state.

Similarly, in *Malcolm v East Detroit,*[6] cited by
plaintiffs in the present action, we held that the emer-
gency medical services act[7] waived governmental
immunity to liability. It explicitly defined the "per-
son[s]" to whom it applied to include governmental
entities.[8] Plaintiffs argue that we should reach a simi-
lar result under the recreational land use act. The

---

[5] MCL 15.362; MSA 17.428(2).

[6] 180 Mich App 633; 447 NW2d 860 (1989), rev'd 437 Mich 132; 468
NW2d 479 (1991).

[7] MCL 333.20701 *et seq.;* MSA 14.15(20701) *et seq.,* repealed and
replaced by 1980 PA 179, MCL 333.20901 *et seq.;* MSA 14.15(20901) *et seq.*

[8] Much of this Court's opinion in *Malcolm* concerned the nature of lia-
bility to be imposed on the state, because the statute there distinguished
direct and vicarious liability. See, generally, 437 Mich 138-148. The recrea-
tional land use act makes no distinction between direct and vicarious lia-

emergency medical services act was comparable to the recreational land use act in that it granted immunity from liability, except for gross negligence or wilful and wanton behavior. However, the emergency medical services act contained a specific provision defining governmental units as "person[s]" for purposes of the act.

The recreational land use act, on the other hand, mentions neither the state nor its political subdivisions. It provides:

> No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee. [MCL 300.201; MSA 13.1485.][9]

On its face, the act applies only to owners, tenants, or lessees of land, and does not define those terms to include governmental entities. There is no express

---

bility, so those considerations are not pertinent to the resolution of the present case.

[9] The recreational land use act was repealed by 1994 PA 451, § 90106, and reinstated by 1995 PA 58, § 1, effective May 24, 1995.

The current provision appears at MCL 324.73301(1); MSA 13A.73301(1):

> Except as otherwise provided in this section, a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.

waiver of governmental immunity from liability under the act, because the act does not define the persons to whom it applies to include either the state or its political subdivisions.

### B. NECESSARY INFERENCE

Next we decide whether the recreational land use act gives rise to a necessary inference that the Legislature intended to waive the state's immunity to liability. As we discussed earlier, there is no conflict between the recreational land use act and the governmental tort liability act. Hence, we do not apply the recreational land use act, thereby waiving the state's immunity from liability.[10] To find a conflict between the acts, we would have to conclude that each applied to government property, and that neither could be read to give effect to both.

First, the recreational land use act does not apply to public property. The act applies to owners of land, and while it does not mention the state, it could be argued that the Legislature intended the state to be included. However, looking at the purpose behind the act and the circumstances surrounding its passage, it becomes clear that the Legislature did not intend the act to apply to publicly owned property. Therefore it did not intend the act to waive the state's immunity from liability.

### 1. PURPOSE OF THE RECREATIONAL LAND USE ACT

The recreational land use act passed in 1953 in response to fears that potential negligence liability would discourage property owners from allowing

---

[10] See part II.

others to use their property for recreational purposes. It was seen as promoting tourism by " 'opening up and making available vast areas of vacant but private lands to the use of the general public.' " *Wymer v Holmes*, 429 Mich 66, 78; 412 NW2d 213 (1987).

The act was designed to "restrict[] suits by persons coming upon the property of another for [recreational] purposes, and to declare the limited liability of owners of property within this state."[11] The act limited liability in order to encourage landowners to open their property to others for recreation.[12]

### 2. CIRCUMSTANCES SURROUNDING THE ADOPTION OF THE ACT

At the time the act became law, the state already had a vast system of parks and forests. Hence, there is little likelihood that it was intended to encourage the state to open its own lands for recreational uses.[13] More importantly, the state was already immune from liability, so the Legislature would have no reason to grant the state a second layer of immunity.

### 3. THE LIABILITY-LIMITING NATURE OF THE RECREATIONAL LAND USE ACT

Finally, the recreational land use act is a liability-limiting, as contrasted with a liability-imposing, act. It

---

[11] 1953 PA 201, amended by 1964 PA 199, § 1, effective May 22, 1964; 1974 PA 177, effective June 23, 1974.

[12] The recreational land use act was designed to encourage use of parcels of land that are too large to be made safe or to which access could not easily be restricted. It was not designed to limit liability in residential backyards, but instead applies only to large undeveloped tracts of land that are suitable for outdoor recreation. *Wymer v Holmes, supra.*

[13] See for example, 1915 PA 212, § 1 (authorizing the Public Domain Commission to accept gifts of property for public parks), and 1948 CL 299.1 *et seq.*

did not create a cause of action against landowners where none existed before. Instead, it eliminated liability for negligence, and left liability only for gross negligence and wilful and wanton misconduct.

A conflict between statutes is not the only source of a necessary inference that the Legislature intended to waive the state's immunity from liability. However, here the factors that lead us to conclude that there is no conflict also militate against an inference that the Legislature intended to waive the state's immunity from liability. Our conclusion that the recreational land use act does not apply to public property is sufficient to answer the question. Even if the act were held to apply to public property, it would not create a cause of action against the state. The act would simply limit the liability of a governmental entity that is already immune from suit.

Beyond the fact that the state might be construed to be a landowner, there is nothing from which to infer that the Legislature intended to subject the state to liability. Any inference is negated by the purpose behind the act, the circumstances surrounding its adoption, and its liability-limiting nature.

### V. CONCLUSION

The recreational land use act was not intended to create an exception to governmental immunity. The act does not expressly waive immunity because it does not mention the state or its political subdivisions. No necessary inference that the Legislature intended to waive immunity arises from the act. It was intended to limit the liability of private landowners in an effort to encourage them to make their property available for the use of the general public.

We affirm the decision of the Court of Appeals.

MALLETT, C.J., and CAVANAGH and BOYLE, JJ., concurred with KELLY, J.

TAYLOR, J. (*concurring*). I concur with the majority because the recreational land use act (RUA), MCL 300.201; MSA 13.1485, does not apply to the land in question in this case. The reason for this, as the majority itself states, is that the RUA does not apply to public lands. *Ante*, p 573. See also *Wymer v Holmes*, 429 Mich 66; 412 NW2d 213 (1987). Once this is understood it is apparent that the RUA could not create an exception to the governmental tort liability act, MCL 691.1407(1); MSA 3.996(107)(1).

Further I agree that there was no waiver of the governmental immunity defense.

I express no opinion regarding the remainder of the majority opinion, it being unnecessary to the resolution of the case.

BRICKLEY and WEAVER, JJ., concurred with TAYLOR, J.