# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE NASH, Personal Representative of the
ESTATE OF CHANCE AARON NASH,
deceased,

        Plaintiff-Appellant/Cross-Appellee,

v

DUNCAN PARK COMMISSION,

        Defendant-Appellee/Cross-
        Appellant.

UNPUBLISHED
August 10, 2017

No. 331651
Ottawa Circuit Court
LC No. 10-002119-NO

DIANE NASH, Personal Representative of the
ESTATE OF CHANCE AARON NASH,
deceased,

        Plaintiff-Appellant/Cross-Appellee,

v

DUNCAN PARK TRUST and EDWARD
LYSTRA, RODNEY GRISWOLD, and JERRY
SCOTT, individually and as Trustees of the
Duncan Park Trust,

        Defendants-Appellees/Cross-
        Appellants.

No. 331840
Ottawa Circuit Court
LC No. 12-002801-NO

DIANE NASH, Personal Representative of the
ESTATE OF CHANCE AARON NASH,
deceased,

        Plaintiff-Appellant,

v

ROBERT L. DEHARE,

No. 331842
Ottawa Circuit Court
LC No. 12-003145-NO

-1-

Defendant-Appellee.

CITY OF GRAND HAVEN, successor trustee of
the Duncan Park Trust,

      Appellee,

v

DIANE NASH, Personal Representative of the
ESTATE OF CHANCE AARON NASH,
deceased,

      Appellant.

No. 331869
Ottawa Probate Court
LC No. 15-062257-TV

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

In Docket Nos. 331651, 331840 and 331842, plaintiff appeals as of right the circuit court's order granting defendants summary disposition. In Docket Nos. 331651 and 331840, defendants cross-appeal from the same order, claiming that the circuit court should have granted summary disposition on additional grounds. In Docket No. 331869, plaintiff appeals as of right a probate court order modifying the terms of a trust and appointing the City of Grand Haven as trustee. We affirm the circuit court and probate court orders. Given this affirmance, we decline to address defendants' cross appeal in Docket No. 331840.

I. BASIC FACTS AND PROCEDURAL HISTORY

As the circuit court explained:

These combined cases arise out of the same underlying tragedy: 11-year-old Chance Nash died when he struck a fallen tree in a forest while snow sledding. Plaintiffs seek to hold the landowner and various other parties liable for this death. These combined cases have been aggressively prosecuted and defended, and have generated multiple written opinions by the trial court, a published decision by the Court of Appeals, and a granting of leave, subsequently vacated, by the Supreme Court. In short, these cases have created a procedural labyrinth. However, the substantive issue involved is simple: Are defendants liable for the death of Chance Nash when Chance struck a naturally fallen tree while sledding down a snowy, wooded, natural hill in an undeveloped tract of land known as Duncan Park? [Footnote omitted.]

-2-

This is the second time the case has been before the Court. The first case, *Nash v Duncan Park Comm'n*, 304 Mich App 599; 848 NW2d 435 (2014), vacated in part by 497 Mich 1016 ("*Nash I*") provides much of the background information. The land where Chance had his accident was previously owned by Martha and Robert Duncan. In an effort to honor her husband, Martha created a trust deed in 1913, naming herself as the "party of the first part" and the "Trustees for and in behalf of the people of the city of Grand Haven" as the "parties of the second part. *Id*. at 604-605. The trust deed provided, in part:

> "[Mrs. Duncan], desiring to transfer the land hereinafter described to the PEOPLE OF THE CITY OF GRAND HAVEN, in order to perpetuate the name of her deceased husband ... has GRANTED, BARGAINED, SOLD, REMISED, RELEASED, ALIENED AND CONFIRMED, and by these presents does sell, remise, release, alien, confirm and convey unto the Parties of the Second Part and to their successors in office forever, all that piece of land situated in the City of Grand Haven ... known and described as follows . . ." [*Id.* at 605.]

The trust deed was conditioned, in part on the creation of a "Park Board" that would be known as "The Duncan Park Commission," comprised of three named trustees that were granted full control and supervision of the park. *Id*.

> Another condition of the trust deed provided:
>
> "The above-described premises shall be at all times known and described as 'DUNCAN PARK' and said described parcel of land shall always be held and occupied by said grantees for and in behalf of the Citizens of the City of Grand Haven as a public park, for the use and enjoyment of the citizens or inhabitants of Grand Haven . . ." [*Id.* at 606.]

For purposes of this appeal, the final condition of note required the city to provide a means for the park's care, but provided:

> "But it shall be the right and duty of the said TRUSTEES to remove all dead, dying, or unsightly trees, to thin out the undergrowth, wherever necessary, to remove dead branches, noxious weeds, or other rubbish, and in short, keep said park in as neat and trim a condition as the means at their command will allow." [*Id*.]

The city enacted an ordinance on October 20, 2013 that created "The Duncan Park Commission." The ordinance provided, in part:

> "It is the definite purpose of this ordinance to create and establish a permanent commission, which commission shall have the power and authority at all times to manage and control that plat of land deeded to the three trustees before mentioned for and in behalf of the citizens of the City of Grand Haven, by Mrs. Martha M.H. Duncan, for public park purposes, in accordance with the deed of gift of said park. [*Id.* at 607.]

-3-

At the time of Chance's accident the three trustees were defendants Edward Lystra, Rodney Griswold, and Jerry Scott.

In November 2010, plaintiff sued the Commission, claiming that the Commission failed to maintain the sledding hill and failed to warn sledders of the dangers of sledding on the hill. The circuit court granted the Commission summary disposition pursuant to MCR 2.116(C)(7), finding that the Commission was authorized by the city and constituted a political subdivision entitled to governmental immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. *Id.* at 608-609. In April 2012, plaintiff filed a second suit against the Duncan Park Trust and its three individual trustees, alleging both negligence and gross negligence. Plaintiff later moved to add Robert DeHare, the park's groundskeeper, as a defendant. *Id.* at 610. The circuit court determined that Duncan Park Trust was not, in fact, a trust; rather it was a governmental unit of the City of Grand Haven. Because there was no trust, there could be no trustees. The circuit court also denied plaintiff's motion to amend to add DeHare as a party defendant. *Id.* at 610-613. In *Nash I*, our Court concluded that there was a valid trust created, which transferred legal ownership of the land to the three trustees and *not* the City of Grand Haven. For that reason, governmental immunity did not apply for either the Trust or the Commission. *Id.* at 604, 613-630.

Following remand and after additional pleading and discovery, the Commission, the Trust, and the individual trustees once again moved for summary disposition, arguing that: (1) they owed Chance no duty of care; (2) the Recreational Land Use Act (RUA), MCL 324.73301 *et seq*. provided immunity from suit; (3) the danger was open and obvious; (4) the Estate and Protected Individual Code (EPIC), MCL 700.7306(2), shielded the trustees from liability; and (5) they were entitled to governmental immunity. DeHare also separately moved for summary disposition, arguing that the danger was open and obvious and that he owed Chance no duty of care.

The circuit court issued an opinion and order on February 3, 2016. After setting forth a detailed analysis on each of the issues, the circuit court provided the following conclusion:

> In December, 2009, Chance Nash snow sledded down a hill in heavily wooded Duncan Park and struck a naturally fallen tree near the bottom of the hill. Tragically, Chance passed away. In these consolidated cases, plaintiff seeks to hold defendants liable for Chance's death. The theory essentially being that Duncan Park is unsafe for snow sledding, that defendants knew that it was unsafe, and that defendants failed to make the park safe for that activity.

> The Trust document did not create any duty owed by any of the defendants to Chance. Neither has it been established that any of the defendants did any negligent act that contributed to this tragic "freak" accident. Plaintiff speculates that DeHare trimmed a branch off the fallen tree simply because DeHare was the caretaker and used a chainsaw in his duties. Speculation as to who did what is not evidence and is not sufficient to sustain a cause of action. In any event, there is no evidence that any trimming of the fallen tree was negligently performed.

The Trustees, the Duncan Park Trust, and the Duncan Park Commission are shielded from liability for this tragic accident under the [RUA], absent gross negligence and/or willful and wanton conduct. It simply cannot be said that these landowners acted recklessly, without concern for Chance, by simply allowing a forest to remain a forest. As noted, it has not been established that any of these defendants did any act that caused injury or death to Chance. Rather, plaintiff simply claims that these defendants should have "cleaned up the woods."

This tragedy did not result from any manmade or artificial condition of the land. Rather, this tragedy resulted from Chance striking a naturally fallen tree in a forest. Plaintiff has not explained how allowing undeveloped land to remain undeveloped is reckless conduct. There is no evidence that the hill was dangerous, neither has evidence been presented that the fallen tree itself was dangerous. Rather, it was the decision to sled down a wooded hill that was dangerous. That the owners tolerated, knew, or should have known, that children sledded down wooded hills does not make their lack of action reckless or willful and wanton. Rather, that knowledge is consistent with the purpose of the Trust document and the RUA-to allow the public to use land for recreational use while shielding the owner from ordinary negligence claims. A landowner is not to be held responsible for the decisions of one who engages in outdoor recreational activities on undeveloped land.

Similarly, the open and obvious condition of Duncan Park defeats this premises liability claim. Again, Duncan Park is an undeveloped heavily wooded tract of land. Given the natural state of the land, it can hardly be claimed that trees, living or fallen, are not open and obvious. Adults and children know that trees are naturally growing immovable objects. That the fallen tree which Chance struck may have been partially or completely covered by snow does not change the open and obvious character of the land and are not special aspects that give rise to an unreasonable risk of harm. To hold otherwise would subject landowners/license holders to liability for a child who steps into a "hidden" gopher hole and breaks his ankle while running in the woods because "the owner knew that gophers dig holes and children are allowed to run by those holes in the woods." This is contrary to common law, case law, and common sense.·

Defendants are not liable for the tragic death of Chance Nash when Chance struck a naturally fallen tree while sledding down a snowy, wooded, natural hill in an undeveloped tract of land known as Duncan Park.

In Docket Nos. 331651, 331840 and 331842, plaintiff appeals as of right the opinion and order entered, arguing that the circuit court erred in granting the Trust, the Commission, the individual trustees, and DeHare summary disposition. In Docket Nos. 331651 and 331840, the Trust, the Commission and the individual trustees cross-appeal from the same opinion and order, arguing that the circuit court erred in finding that they were not entitled to summary disposition on the basis of governmental immunity. As will be discussed in greater detail later in this opinion, the probate court later reformed the trust and the City was named as successor trustee

after the three trustees resigned without naming successor trustees. The probate court's ruling forms the basis of plaintiff's appeal in Docket No. 331869.

## II. DOCKET NOS. 331651, 331842 AND 331842

The trial court granted defendants summary disposition under MCR 2.116(C)(7) and (C)(10). "This Court reviews de novo a circuit court's decision whether to grant or deny summary disposition." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012).

> A motion for summary disposition under MCR 2.116(C)(7) asserts that a claim is barred by immunity granted by law and may be supported or opposed by affidavits, depositions, admissions, or other documentary evidence; the substance or content of the supporting proofs must be admissible in evidence. A trial court properly grants a motion for summary disposition under MCR 2.116(C)(7) when the undisputed facts establish that the moving party is entitled to immunity granted by law. We review de novo a trial court's grant of summary disposition pursuant to MCR 2.116(C)(7). [*Johnson v ACLU*, ___ Mich App ___; ___ NW2d ___ (Docket No 330536, issued May 23, 2017, slip op, p 6.]

Similarly,

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

Plaintiff raises a number of issues on appeal. However, we hold that because the RUA is dispositive of plaintiff's claims, we decline to address the circuit court's alternative grounds in granting summary disposition.

MCL 324.73301(1) provides:

> Except as otherwise provided in this section, a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.

"[T]he protections afforded by MCL 324.73301 apply only to the traditional premises possessors identified by the Legislature in that statute: landowners, tenants, and lessees." *Duffy v Irons Area Tourist Ass'n*, 300 Mich App 542, 547; 834 NW2d 508 (2013).

In granting summary disposition, the circuit court noted that it was peculiar for plaintiff to argue that the RUA did not apply because Duncan Park was "a public park." The circuit court found such an argument "puzzling in that plaintiff successfully argued in the Court of Appeals that Duncan Park was not publicly owned – presumably for the reason that if it *was* publicly owned, then there would be governmental immunity . . .." On appeal, plaintiff continues to argue that, although the Trust may claim immunity under the RUA, the immunity does not extend to the individual defendants. This argument fails in light of this Court's prior decision in *Nash I*. This Court specifically concluded that "[b]ecause Mrs. Duncan placed the land in an express trust, *the trustees own the land*." 304 Mich App at 624 (emphasis added). "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013), quoting *New Props, Inc v George D Newpower, Jr, Inc,* 282 Mich App 120, 132; 762 NW2d 178 (2009). Therefore, to the extent plaintiff argues that the trustees were not the "owners" of Duncan Park, such an argument must fail.

Plaintiff further argues that Duncan Park is a "hybrid" in that it is privately owned property that is open to the public. Plaintiff cites *Ballard v Ypsilanti*, 457 Mich 564; 577 NW2d 890 (1998) in support of its position. The circuit court rejected this argument:

> Plaintiff, without any authority and after successfully arguing that the Trust was a private creation to avoid the GTLA, now declares that this privately owned land has morphed into publicly owned land so that the RUA does not apply. Once again, we look at the plain language of the statute. "[A ]n owner of land is not liable to a person who injures himself on the owner's land ..." The Trustees (DPT) own the land. The DPT was a private creation of Mrs. Duncan. The Trustees administer the DPT. Therefore, the landowners are afforded the protection of the RUA.

> In a vain attempt to support her position, plaintiff cites *Ballard* which simply says that the GTLA limits liability on government owned property and the RUA limits liability on privately owned property. *Ballard* did not say, as plaintiff advocates, that the RUA does not apply to privately owned lands when those privately owned lands are held open to the public. The Supreme Court did not make such a statement because that would gut the purpose of the RUA which is to make privately owned lands available for recreational use by members of the public while affording the landowner protection from liability. . . .

> The RUA is not limited by the type of land, the status of the injured party and does not differentiate between active and passive negligence. The RUA applies to landowners, tenants and lessees. While discussing a previous iteration of the statute, *Thomas* [*v Consumer Power Co*, 58 Mich App 486; 228 NW2d 786, rev'd in part 394 Mich 459 (1975)] held that the Legislature uses broad terms in an attempt to cover "any recreational activity which might be imposed on the lands of another."

-7-

The Trustees (DPT) own Duncan Park. In the case at bar it is undisputed that plaintiff's decedent was engaged in an outdoor recreational activity, snow sledding, on the undeveloped lands, the res of the DPT, without paying any remuneration when he was injured. These actions are within the scope of the RUA and preclude plaintiff's simple negligence claim against the Trustees (DPT) as owners of the land. [Footnotes omitted.]

The trial court is correct. In *Ballard*, the plaintiffs' decedents drowned while wading in a man-made lake at a township park. *Ballard,* 457 Mich at 565. The estates sued the township and the Court was asked to decide whether the RUA created an exception to governmental immunity. The Court concluded that it did not. *Id.* at 566. The *Ballard* court initially noted that there was no conflict between the RUA and the GTLA; instead, "[t]he GTLA limits liability on government-owned property and the RUA limits liability on privately owned property. They do not both apply to the same property, although they share the common purpose of limiting liability." *Id.* at 573. Quite simply, *Ballard* noted that the RUA "does not apply to public property." *Id.* at 576. The purposes of the RUA was to encourage property owners to open their property to others for recreation. *Id.* at 576-577. Because the state "already had a vast system of parks and forests" and because the state was already immune from tort liability, *Ballard* concluded that "there is little likelihood that it was intended to encourage the state to open its own lands for recreational uses." *Id.* at 577. The Court also looked to the "liability-limiting nature" of the RUA and found that the RUA "did not create a cause of action against landowners where none existed before. Instead, it eliminated liability for negligence, and left liability only for gross negligence and willful and wanton misconduct." *Id.* at 577-578. *Ballard* provides no support to plaintiff's theory that Duncan Park is a "hybrid" park to which the RUA does not apply.

Plaintiff further argues that, even if the RUA applies, there was a question of fact as to whether defendants were grossly negligent or acted with willful and wanton misconduct. The circuit court rejected this argument:

Plaintiff's claims of gross negligence center on defendant's knowledge of the dead tree in question, that defendant knew sledding in the park was dangerous, that defendants knew the public sledded down the hill in question, and that defendants had the ability to remove the hazard. Plaintiff argues that several defendants did not clean up the woods to allow for "safe" sledding.

Chance was engaged in an outdoor recreational activity on undeveloped land. It does not matter that the Trustees knew that children were sledding down a wooded hill. The landowner did nothing to make the forest "more dangerous" and had no duty to make the forest "safer." Plaintiff seems to suggest that this undisturbed forest should be culled of all dead or dying trees, fallen branches, and any other potential hazard that could in any way cause harm to a visitor, and failing to do so is gross negligence. Such a standard is impractical, unworkable, devoid of common sense, and contrary to law.

"[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence. Rather, a plaintiff must adduce proof of conduct so reckless as to demonstrate

-8-

a substantial lack of concern for whether an injury results." *Maiden v Rozwood*, 461 Mich 109, 122–23; 597 NW2d 817 (1999) (internal quotation marks and footnoted omitted). In the context of the GTLA, our Court has explained that gross negligence is:

> almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

"[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm *or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." Jennings v Southwood*, 446 Mich 125, 140; 521 NW2d 230 (1994), quoting *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810. Whether a defendant has acted grossly negligent is generally a question of fact. *Id.* at 88. However, "if, on the basis of the evidence presented, reasonable minds could not differ, then the motion for summary disposition should be granted." *Jackson v Co of Saginaw*, 458 Mich 141, 146; 580 NW2d 870 (1998). The circuit court concluded that defendants could not be considered grossly negligent by simply "failing to remove a naturally fallen tree in a forest."

The circuit court cited *Boaldin v Univ of Kansas*, 747 P 2d 811 (Kan 1987), in support of its decision. In *Boaldin,* a college student sued the University of Kansas after he was injured in a sledding accident. The student used a cafeteria tray to sled. After successfully sledding down a path on at least two occasions, the student lost control and struck a tree at the bottom of the hill. *Id.* at 289-290. One of the issues to be determined by the Kansas court was whether the student demonstrated "gross or wanton negligence." *Id.* at 292. The court explained the proper standard:

> "Proof of a willingness to injure is not necessary in establishing gross and wanton negligence. This is true because a wanton act is something more than ordinary negligence but less than willful injury. To constitute wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act." [*Id.* at 293, quoting *Lee v City of Fort Scott,* 238 Kan 421; 710 P2d 689 (1985).]

The student had argued gross and wanton negligence based on the fact that the defendant was aware: (1) students were sledding and, in fact, encouraged them to do so by allowing them to use cafeteria trays; (2) there were obstacles and trees where the sledding took place; (3) a student had been injured in the same area before; but (4) the defendant did nothing to warn or make safe the area. *Boaldin*, 242 Kan at 293-294. The *Boaldin* disagreed and concluded:

> The fact that defendants were aware of sledding on campus and that prior accidents had occurred is not evidence of gross and wanton conduct. Almost every recreational activity has risks of injury, and that is the reason for adopting [the governmental immunity statute]. If permitting recreational activity to occur knowing that injury may result is to be considered gross and wanton conduct, then

every governmental entity in this state would be guilty of gross and wanton conduct. To adopt plaintiff's argument would render meaningless the exception from liability as contained in [the immunity statute]. The recognition of the danger occasioned by sledding between two trees was best articulated by the University Director of Housing: "Any time you attempt to sled close to an immovable object, that is bad judgment. The hill is not dangerous. The tree is not dangerous. The judgment is what's dangerous." We find the evidence failed to establish gross and wanton negligence by the defendants, and therefore the defendants are immune from liability . . . [*Id.* at 294–295.]

Here, the circuit court borrowed heavily from *Boaldin* and made the following conclusions:

> This Court agrees with the Kansas Supreme Court. At most, plaintiff may have stated a claim of ordinary negligence in claiming that defendants knew of downed trees and tree branches that posed hazards to those sledding down hills, could have removed the hazards, and failed to do so. These facts do not demonstrate a substantial lack of concern for whether an injury results. In a heavily wooded park that was generally maintained in its natural state, pursuant to the directive of the Trust grantor, it is responsible management, not gross negligence, to leave tree limbs where they lay in wooded ravines. Knowledge that some sledding children would venture beyond the open sledding slope to other, more challenging, natural areas of the park, cannot be deemed gross negligence.

> Plaintiff also claims that the fallen tree was trimmed so as to make the tree more dangerous. Even if true, it cannot be said that trimming the branches of a fallen tree in a forest amounts to conduct so reckless as to demonstrate a substantial lack of concern for whether injury results.

> ***

> Evidence that defendants knew that children used slopes ending in a ravine in which trees and fallen branches were left to lie for sledding does not establish that any of the defendants acted intentionally or with wanton disregard for the safety of Chance. Plaintiff's evidence also fails to demonstrate "such indifference to whether harm will result as to be the equivalent of a willingness that it does.''

The trial court's reasoning is sound. The inquiry was not what defendants should have done to make the activity safer, but whether they willfully disregarded Chance's safety. Again, this requires something more than mere negligence. No juror could reasonably find that defendants engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result. Therefore, even accepting as true plaintiff's allegations that the tree had been down for a number of years and that a sledding accident was foreseeable, the evidence did not create a genuine issue of material fact that defendants were grossly negligent.

III. DOCKET NO. 331869

Plaintiff argues that the probate court erred in reforming the trust and naming the City as the sole trustee. [1]

"[A]ppeals from a probate court decision are on the record, not de novo." *In re Jajuga Estate*, 312 Mich App 706, 711; 881 NW2d 487 (2015), quoting *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "We review the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *In re Jajuga Estate*, 312 Mich App at 711. "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Boyd v Civil Serv Comm'n*, 220 Mich App 226, 235; 559 NW2d 342 (1996). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 273; 761 NW2d 761 (2008).

At approximately the same time the circuit court was entering judgment in defendants' favor, there was a separate proceeding in the Ottawa Probate Court. By July 2015, the trustees had resigned and had not appointed any successors. On December 8, 2015, plaintiff, as "creditor of the trust," filed a petition for appointment of successor trustee, alleging that the Trust was a necessary party to the underlying litigation. Plaintiff added that "the interested parties in this matter are unclear but appear to be the citizens of Grand Haven . . ." Plaintiff further noted, however, that it was "not aware of any specific individual that is a resident of Grand Haven who would be willing and capable of acting as successor trustee in this case." Plaintiff's petition simply requested "that this Court enter an Order appointing a successor Trustee."

The City also filed a petition for reformation of the trust. The City claimed that it's citizens were the beneficiary of the trust and that in 1918 Mrs. Duncan deeded separate property adjacent to Duncan Park directly to the City. It further added that continuation of the trust was impracticable and that Mrs. Duncan's intent would be better served by reforming the trust. Specifically, the City noted that, in light of the private nature of the property, a trustee risked personal liability exposure like the one in the underlying lawsuit. Private ownership also impeded funding from groups like The Grand Haven Community Foundation, who could only contribute to governmental and charitable organizations. Finally, the City argued that the current governance structure lacked transparency and accountability. The City requested that it be appointed as the sole trustee. It would then ordinance a governing structure to appoint five or more members who could be removed for misfeasance, malfeasance or nonfeasance. Such an arrangement would ensure that the governing board would enjoy governmental immunity, as well as promote transparency by ensuring that the board is subject to the Freedom of Information Act (FOIA).

Plaintiff responded that the City was not a named beneficiary of the trust. Additionally, plaintiff argued that reformation was not necessary because the trust terms were not impractical. The fact that successor trustees would be personally liable was based on "sound public policy that a fiduciary would potentially be personally liable for his or her actions." Trustee liability

---

[1] Though the probate court proceedings use the terms "petitioner" and "respondent," we will continue to use the term "plaintiff" for uniformity.

would be limited. Plaintiff also noted that the trust was a charitable trust and, therefore, eligible to receive charitable donations. And, although the City argued that the trust lacked accountability and transparency, the trust document gives the trustees the power to amend their own rules. Nor would reformation further Mrs. Duncan's intent, which was to specifically exclude the City from governing Duncan Park.

At the January 11, 2016 hearing, plaintiff's attorney indicated that "what we do agree upon is the need for the appointment of a successor trustee under this trust." Plaintiff's counsel indicated that plaintiff "did not have a specific proposed person, because at that time and also at this time, we haven't found somebody who we believe is suitable at this point in time to present to the Judge as a successor trustee." The probate court asked whether the search for successor trustees rendered the trust terms impracticable, to which plaintiff's counsel responded that impracticability meant almost impossibility and "we might try to find someone who could serve in that role." Plaintiff's counsel also noted a potential conflict because naming the City as trustee would effectively mean that the City owned Duncan Park, which was inconsistent with the trust. It also raised the issue of governmental immunity. Still, counsel noted "I cannot honestly tell you today we have a name of an entity or the name of an individual to propose." The probate court noted:

> Because of the potential – there is a potential liability hanging out there for whoever might serve as trustee if the trust were not amended, and since you have not been able to identify even one person, much less three, who would be willing to serve in that capacity, I just don't know what the Court would be able to do to try to find someone who would be willing to do that. . . .
>
> ***
>
> So, I don't know how you're going to find anybody.

Plaintiff's attorney asked the probate court "for some direction or some time in order to come up with a specific proposal as to who the trustee should be. We don't have one today."

The City's attorney argued that plaintiff lacked standing to petition for a successor or to oppose a reformation of the trust. He noted that plaintiff was not a resident of Grand Haven and not a beneficiary under the trust. He further noted that if plaintiff's motivation was to have a successor trustee in order to proceed with the underlying litigation, "it should not matter who's appointed."

> THE COURT: So, making the distinction, if they want a trustee and if I appoint the City as trustee, that end their – that ends their argument and they don't have standing to consider the second request, which [is] to reform the trust to create a commission and have it being operated by commissioners?
>
> MS. RYSBERG: Yes. Again, if – if I concede the argument for a moment that they have standing as a creditor, they don't have standing as a theoretical beneficiary to be involved in the discussion of the reformation of the trust, because their interest are limited to, again, theoretically being paid out on a

-12-

judgment entered against a trust and a commission that was a state completely different than what it would be moving forward.

The probate court noted that a determination of Mrs. Duncan's intent was difficult because of the unusual way in which she created Duncan Park – "it seems a bit of a convoluted mess." The City's attorney further noted plaintiff's petition to appoint successor trustees shows the impracticability of continuing the trust as it was originally drafted.

The probate court issued a detailed opinion on January 21, 2016, followed by a February 29, 2016 order, which provided:

> IT IS FURTHER ORDERED that (1) the City of Grand Haven is appointed as sole successor trustee of the Duncan Park Trust; (2) the Duncan Park Trust is reformed to allow the City to adopt an amendment to its Duncan Park ordinance containing provisions for a governing board of five or more members appointed by the City Council for limited terms, and removable for misfeasance, malfeasance, or nonfeasance; and (3) that the ordinance may provide such other terms and conditions as the City finds necessary for the effective administration of Duncan Park.

After plaintiff voiced concerns regarding the retroactive effect of the probate court's ruling on issues such as governmental immunity, the order further provided: "IT IS FURTHER ORDERED that this order is prospective only, and all previous Orders not inconsistent with the aforementioned remain in full force and effect."

Plaintiff's claim that the City lacked standing to request a successor trustee warrants little discussion. In its opinion, the probate court noted that both parties had standing to petition for successor trustees. Plaintiff had standing by virtue of the fact that it was a potential judgment creditor. Citing *O'Leary v Bd of Fire & Water Comm'rs of Marquette*, 79 Mich 281; 44 NW 608 (1890), the probate court concluded that the City likewise had standing as the direct representative of the people of Grand Haven. Both plaintiff and the City requested the same thing – appointment of a successor trustee. Plaintiff needed a successor appointed in order to continue its underlying action against the trust. Therefore, whether *O'Leary* stands for the proposition that the City was the representative of the people of Grand Haven is of no moment. Although the probate court technically "denied" plaintiff's request for an appointment of a successor trustee, plaintiff received the relief requested when, in fact, the probate court appointed the City as the successor. Plaintiff's issue is not really whether the City lacked standing to seek a successor but, rather, with the probate court's decision regarding *who* that successor would be.

The heart of plaintiff's appeal is the probate court's decision to modify the terms of the trust. The probate court concluded:

> Turning to the City's petition, a court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable. MCL 700.7412(1). This Court holds that continuation of the Duncan Park Trust on its current terms would be highly impracticable for several reasons.

-13-

First, Duncan Park is one park, not two. Duncan Park would best be administered by the City of Grand Haven, acting in the City's role as the direct representative of the citizens of Grand Haven. In terms of financial and physical resources, it is the City – rather than a private individual – that is in the best position to carry out Mrs. Duncan's wishes. What may have been practicable in 1913 is impracticable in 2016.

Second, personal liability for the claims brought by the Nash estate may or may not extend to the former trustees. However, personal liability for future accidents will be borne by future trustees, yet to be named, and will have a chilling effect on the willingness of any person to volunteer for the job of trustee. As noted above, neither party has been able to find persons willing to assume this thankless and risk-laden task.

Third, Duncan Park has previously received financial support from donors, such as the Grand Haven Community Foundation, that may make donations only to governmental or 501(c)(3) organizations. This support will now be impossible given the ruling by the Court of [A]ppeals declaring the trust to be completely independent of the City. How will the Park function without support from either the City or the Foundation? The Court notes that the Community Foundation filed a waiver and consent to the City's petition.

Fourth, oversight by a three-person commission is problematic. If one member is absent or one office vacant, and the other two trustees disagree, no decision can be made. Allowing members to find their own replacement may lead to cronyism. A private trust is not subject to the [FOIA], MCL 15.231 et seq., or the Open Meetings Act, MCL 15261 et seq.

Fifth, Mrs. Duncan's intent of providing a well-maintained park for the use and enjoyment of Grand Haven area residents will be preserved in perpetuity by reforming the trust. As it stands now, the Trust is stuck in a legal purgatory in which it cannot fund itself, govern itself, or even respond to the Nash Estate lawsuit. Mowing, tree-trimming, snowplowing, signage and all manner of necessary improvements will be left unattended unless reformation is granted.

The trial court did not err in finding that the trust terms had become impracticable. MCL 700.7412(1) provides: "The court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration." Again, this issue warrants little discussion. Plaintiff cites *In re Rood's Estate*, 41 Mich App 405, 416; 200 NW2d 728 (1972), in support of its position that impractical and impossible are interchangeable. However, whether "impracticable" or "impossible" applies the result is the same: given that there was no one willing to act as successor trustee due to the potential exposure to liability, the trust terms regarding the appointment of trustees had become both impracticable and impossible. Plaintiff argues that because there was no evidentiary hearing, the probate court lacked evidentiary support for its conclusion. However, plaintiff must concede that there is nothing left for an evidentiary hearing to resolve. Plaintiff conceded on numerous occasions that no successor could be found. The lack of successor trustees, on its

own, served as a basis for the probate court's conclusion that the trust terms had become impracticable and, therefore, subject to modification.

Finally, plaintiff argues that the probate court erred in appointing the City as sole trustee because MCL 700.7402(1)(e) provides that a trust is created only if "[t]he same person is not the sole trustee and sole beneficiary." Plaintiff did not make this argument in the probate court. Additionally, the trust clearly provides that the beneficiaries of the trust are the citizens of Grand Haven, not the City itself. Moreover, we echo the concerns raised by the City's attorney – aside from its interest in having a successor trustee appointed in order to maintain its lawsuit, plaintiff lacks any interest in the management of the trust such that its objections to both the modification and the appointment should be ignored.

Affirmed. As the prevailing party, defendants may tax costs. MCR 7.219.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly

-15-